United States District Court
District of New Jersey
Third Circuit

United States of America
                    Plaintiff

        v.                          :          Case No. 25-147

Omar Smith

                    Defendant       :


Motion To Dismiss Complaint
And Indictment


        Comes now defendant Omar Smith and files this
Motion to Dismiss. Mr. Smith is charged with felon in possession
of a firearm under 18 U.S.C. §922(h). In support of this motion,
Mr. Smith presents the following:


                    I. Legal Background.


Section 922(g)(1) provides:


        It shall be unlawful for any person . . . who has been
convicted in any court of a crime punishable by imprisonment for
a term exceeding one year . . . to ship or transport in interstate
or foreign commerce, or possess in or affecting commerce, any firearm

(1)

Keep and bear arms when I was arrested and charged for Felon in possession of a firearm under Section 922(g)(1). See Bruen, 142 S. Ct. 2111, 2129-30 (2022).

I have limited knowledge and understanding of law, but I know that I am right in this matter and case instance. I previously put in a pro se motion to dismiss regarding this matter, and Mr. Sharma advised me to withdraw the motion, telling me I am not entitled to the relief sought, when in fact I am.

I submit this new motion, and ask that Your Honor do his fiduciary duty towards me and protect my right to due process and equal protection of the law, as I wish to move forward with my pro se motion and stand on the argument within. I also I ask that the court discharge Mr. Sharma from my case.

Omar Smith
x Omar Smith
Respectfully Submitted.

Date: July 14, 2025.

CC.
File.

(2)

And "when it comes to interpreting the Constitution, not all history is created equal." Bruen, 142 S.Ct. at 2136. Courts must "guard against giving postenactment history more weight than it can rightly bear." Id. Historical evidence from the late nineteenth century and twentieth century "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." Id. at 2154 & n.28; see also Dobbs v. Jackson Women's Health Org., 142 S.Ct. 2228, 2267 (2022)(stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact.")

## II. Argument.

### A. Introduction.

The Second Amendment's plain text covers the conduct proscribed by Section 922(g)(1), and the prosecution cannot meet its burden of establishing that this application of Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. Section 922(g)(1) is therefore unconstitutional as applied.

### B. The Second Amendment's plain text covers possession.

Applying Bruen's standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that Section 922(g)(1) criminalizes. 18 U.S.C. § 922(g)(1). The term "'[k]eep arms' was simply a common way of referring to possessing arms." Heller, 554 U.S. at 583.

And Mr. Smith is one of "the people" under the Second Amendment's plain text. See Heller, 554 U.S. a 581 (noting that Second Amendment right

"belongs to all Americans"); id. at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"); see also, e.g., U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause.) Bruen reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. 142 S. Ct. at 2156 (quoting Heller, 554 U.S. at 581).

Because the Second Amendment's plain text covers Mr. Smith's conduct, the Second Amendment "presumptively protects" that conduct. Bruen, 142 S. Ct. at 2129-30.

C. This application of Section 922(g)(1) is not consistent with the Nation's historical tradition of firearm regulation.

The prosecution cannot meet its burden of establishing that Section 922(g)(1), as applied to Mr. Smith, is "consistent with the Nation's historical tradition of firearm regulation." Bruen 142 S. Ct. at 2129-30. Indeed, the Fifth Circuit has stated that "the federal felon firearm possession ban, 18 U.S.C § 922(g)(1), "bears little resemblance to laws in effect at the time the Second Amendment was ratified" as it was enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968." Nat'l Rifle Ass'n of Am., 700 F. 3d at 196, abrogated by Bruen, 142 S. Ct. 2111 (quoting United States v. Booker, 644 F. 3d 12, 23-24 (1st Cir. 2011)).

Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." Kanter v. Barr, 919 F. 3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); see e.g., id. at 453-64 (surveying

history"); *Heller v. Dist of Columbia*, 670 F. 3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S.*, 980 F. 3d 897, 914 (3rd Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane*, 573 F. 3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have not found evidence of longstanding dispossession laws.").

Numerous scholars, too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." *See, e.g., Larson, supra*, at 1374; C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing such prohibitions have their origins in the twentieth century.)

The United States has agreed. Section 922(g)(1), the United States has said in briefing, "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. at *27-28, *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F. 3d 12, 23-24 (1st Cir. 2011). The United States' briefing has stated numerous times: "As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." E.g., Br *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. April 25, 2011) (citing Marshall, supra, at 696-728).

Against that backdrop, the prosecution cannot meet its burden of establishing that this application of Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30.

Indeed, to uphold this application of Section 922(g)(1), the prosecution must establish a historical "tradition" — a robust record of regulations demonstrating an accepted and enduring restriction on the Second Amendment right. See, e.g., id. at 2156 (demanding a "broad tradition," not "outlier" regulations). And because Section 922(g)(1) addresses a general societal problem that has persisted since the 18th century," Bruen instructs that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." Id. at 2131. So too "if earlier generations addressed the societal problem, but did so through materially different means." Id. The inquiry may also turn upon "how" and "why" historical regulations burdened the Second Amendment right. Id. at 2132-33

Because the prosecution cannot establish the requisite historical tradition, Section 922(g)(1) is unconstitutional as applied to Mr. Smith.

## D. Bruen's holding governs.

Bruen's holding must prevail over Heller's dictum. The Supreme Court in Heller did not undertake an "exhaustive historical analysis" when it stated — in dictum, and without citation — that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court described in a footnote as "presumptively lawful." Heller, 554 U.S. at 626-27 & n. 26; see McDonald v. City of Chi, 561 U.S. 742, 786 (2010) (plurality) (same); Bruen, 142 S.Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting same). The Fifth Circuit has described this language as "[d]icta in Heller." United States v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010); accord, e.g., Tyler v. Hillsdale Cty. Sheriff's Dep't, 837 F.

3d 678, 686-87 (6th Cir. 2016)(en banc); United States v. Williams, 616 F.3d 685, 692 (7th Cir. 2010).

Bruen "did not attempt to bolster [the] reasoning"— or lack of — underlying Heller's dictum. See Dobbs, 142 S. Ct. at 2271. Instead, Bruen now holds that "when the Second Amendment's plain text covers and individual's conduct, the Constitution presumptively protects that conduct." 142 S.Ct. at 2126 (emphasis added). What's more, the Court holds that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. "Only if" the government meets its burden, the Court holds, may a court uphold a regulation as constitutional. Id. Bruen's holding must prevail over Heller's footnote-cosigned dictum. See Heller, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.").

So too must Bruen's holding prevail over the Fifth Circuit's earlier analysis of Section 922(g)(1). In a 2001 case involving a prosecution under Section 922(g)(8) — not under Section 922(g)(1) — the Fifth Circuit suggested that certain "narrowly tailored" exceptions to the Second Amendment are permissible. United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001); see United State v. McGinnis, 956 F.3d 747, 755 (5th Cir. 2020)(explaining that Emerson "presumably ... appl[ied] some form of means-end scrutiny sub silentio"). The court in Emerson then cited three sources from the 1980's for the proposition that it is "clear that felons ... may be prohibited from possessing firearms." 270 F.3d at 226 n.21, 261.

But Bruen rejected means-end scrutiny. Bruen, 142 S.Ct. at

2125-27. And since Emerson, the Fifth Circuit, other courts and jurists, numerous scholars, and the United States itself have reached the opposite historical conclusion. See supra, pp. 4-7 of this Motion. What's more, Bruen now instructs that it is the government's burden to "affirmatively prove" that any regulation is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," which the United States cannot do here. Bruen, 142 S.Ct. at 2127.

Nor do cases after Emerson obviate the need to apply Bruen's holding. In the pre-Heller case of United States v. Darrington, the Fifth Circuit simply quoted Emerson in holding that "Section 922(g)(1) does not violate the Second Amendment." 351 U.3d 632, 633-34 (5th Cir. 2003). And after Heller, the Fifth Circuit declined to revisit Darrington based on Heller's dictum. See United States v. Anderson, 559 F.3d 348, 352 & n.6 (5th Cir. 2009); McGinnis 956 F.3d at 755. Yet Bruen's holding establishes a standard that courts must apply. Bruen, 142 S. Ct. at 2126, 2129-30.

Furthermore, Bruen applies to Mr. Smith's 922(g)(1) case, because unlike in United States v. Quailes, 126 F.4th 215 (3rd Cir. 2025) and United States v. Harper, 126 F.4th 215 (3rd Cir. 2025), he was not on probation or parole at the time of his arrest. And unlike in United States v. Bullock, 123 F.4th 183, Mr. Smith has no prior state or federal convictions for assault with a deadly weapon (a handgun), nor for murder or manslaughter (with a handgun). Either of which would put him outside the scope and parameters of him being "one of the people" entitled to keep and bear arms, as guaranteed by his Second Amendment right, of the United States Constitution, to do so. Mr. Smith was simply in possession of a handgun, and well within his rights to do so, when he was arrested. He was

(8)

not in the process nor act of committing any crime.

## III. Conclusion

Under Bruen's "standard for applying the Second Amendment," the Second Amendment's plain text covers Mr. Smith's possession of a firearm. The prosecution cannot meet its burden of demonstrating that this application of Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." And so Section 922(g)(1) is unconstitutional as applied.

Wherefore, Mr. Smith respectfully asks this Court to grant his Motion to Dismiss.

x Omar Smith ,
Respectfully Submitted.

Date: July 14, 2025 .

cc:
    File.

(9)

Certificate of Service

I, Omar Smith, certify that this motion was filed with the Clerk of the United States District Court of New Jersey, for the Third Circuit, in Newark, NJ, at the MLK. Jr. Federal Building & Courthouse, using the United States Parcel service mailing system, on July 14, 2025.

OMAR SMITH
x Omar Smith.
Defendant, pro se.

(10)

Umar Smith
Essex County Correctional Facility
354 Doremus Ave.
Newark, NJ 07105

FOREVER / USA

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2025 JUL 25  A 10 05

Court Clerk
MLK. Jr. Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey
       07102